# Clark County National Bank v. City of Winchester.

(Decided November 2, 1917.)

## Appeal from Clark Circuit Court.

1.  Taxation—Assessment of Property.—Where a taxpayer lists his property at a valuation greater than required by law and does not thereafter complain of such valuation before the Board of Supervisors or Equalization, and without objection or protest pays the tax upon the assessment, he will not be heard to complain.
2.  Municipal Corporations—Taxation—City Council Without Authority to Release.—A city council has no authority by ordinance or otherwise to release a taxpayer in whole, or in part, of the taxes due by such taxpayer.
3.  Municipal Corporations — Taxation — Excessive Assessment by Bank—Release by City—Proceeding to Collect.—Where a bank lists its property in excess of the amount for which it might lawfully have listed it but makes no complaint of its valuation, and the tax books are made up and tax bill rendered to and paid by the bank without objection or protest, and in the following year when the next tax bill is due the bank claims to have discovered that it by mistake listed its property at a greater valuation than was required, and presents the matter to the city council and procures an order from that body directing the collector of taxes to credit the tax bill of the bank with the amount estimated to have been paid in excess of the correct amount for the previous year, and this credit is given by the collector, the city is not estopped thereafter to institute and maintain an action to recover the balance of the taxes due and which was attempted to be remitted by the council, because the ordinance or resolution attempting to expunge the taxes pro tanto was ultra vires and void.

PENDLETON & BUSH for appellant.

H. H. MOORE, F. II. HAGGARD and J. M. BENTON for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

The city of Winchester instituted this action in the Clark circuit court against appellant bank, in August, 1916, to recover of it nine hundred ninety-two ($992.89) dollars and eighty-nine cents tax, due for the year 1914, and ninety-nine ($99.28) dollars and twenty-eight cents penalties. It is admitted that the city properly levied taxes for the years 1913 and 1914, and that appellant bank was properly included upon the list for each of these years, but the bank in its answer asserts that for the year 1913, by mistake, it listed property in excess of what it was legally bound to pay tax upon in such sum as to increase its tax bill $992.89 above what it should

have been.  It failed to discover this mistake in the increase of its property list until October, 1914.  At that time its representative appeared before the city council and explained the matter and induced that body to pass the following order or resolution:

"It was moved by Mr. Brown and seconded by Mr. Hisle that C. B. Strother, Collector of the City of Winchester, be ordered and directed to credit the Clark County National Bank with the sum of $992.89, on the taxes due from said Bank to the City of Winchester for the year 1914.  The vote was as follows:  Yeas—Mr. Scobee, Scrivner, Nunan, Gilbert, George, Brown, Hisle, Dinell, Renaker.  Nays—................."

Upon the passage of this order appellant bank was given credit upon its tax bill for the sum of $992.89, and thereupon paid the balance, amounting to $3,412.92, and was awarded a receipt in full by the tax collector for the year 1914.  It will be observed that the excess is claimed for the year 1913, and that the credit was given against the taxes for the year 1914.  No complaint was made by appellant bank of its assessment valuation for the year 1913.  The board of supervisors did not raise the bank's tax list, but allowed it to remain as fixed by it, and the tax bill was made out upon the valuation of the property as fixed by appellant itself.  The only question that need be considered here is, whether or not the city council of Winchester possessed the power, by ordinance or otherwise, to extinguish the indebtedness or liability of appellant bank to the city on account of taxes? By section 52 of the Constitution of Kentucky it is provided:

"The General Assembly shall have no power to release, extinguish, or authorize the releasing or extinguishing, in whole or in part, the indebtedness or liability of any corporation or individual to this Commonwealth, or to any county or muncipality thereof."

Under this provision of the constitution it was held in the case of the City of Louisville v. the Louisville Railroad Company, 111 Ky. 1, that such an extinguishment of taxes by act of a city council, as the one under consideration, was *ultra vires* and void.  In that case this court said:

"When the property has been regularly assessed, and the assessment passes from the officer making it, and the claim comes into the hands of the collecting officer, we

are clearly of the opinion that the liability is fixed, so that less cannot be accepted in satisfaction thereof. When the actions for these taxes were brought, more than a year had elapsed after the assessment became final, and all statutory right to question the amount of the assessed valuation had long since passed. Moreover, the tax bills were *prima facie* correct as to amount, and the appellee's liability therefor was fixed, so far as legal procedure before the board of assessment, valuation, and equalization was concerned. The compromise agreement was beyond the power of the general council, and was *ultra vires* and void.''

The purpose of the constitutional provision above referred to and the legislative enactment thereunder, was intended to make taxation uniform and to place the burden of government equally on all. The amount of tax due by appellant bank to the city was fixed and certain at the time of the passage of the resolution by the council, and it was not therefore a doubtful or unliquidated claim, which could be compromised. No doubt the council was convinced that the bank had fixed a valuation upon its property greater than required by law, but that did not bring it within the authority of that body to expunge *pro tanto* the tax bill. The resolution was an effort on the part of the city council to relieve the bank of its indebtedness to the city to the extent of $992.89 upon its tax bill, not for the year for which the mistake is claimed to have occurred, but for the succeeding year, and such action is within the constitutional prohibition.

It is the duty of a taxpayer to list his property at its fair cash value at a fair voluntary sale; and when such a list is made the presumption is, that the taxpayer has fixed the valuation upon his property which he regards as measuring up to this requirement. If, however, he should afterwards become dissatisfied with his list, or discover some mistake in the valuation of his property, he has the privilege of going before the board of supervisors of the municipality to have the error, if one exists, corrected. In case the board of supervisors should decline to grant the relief sought by the taxpayer, he may appeal the question to the courts and have the matter adjudicated. Failing to pursue this course, but acquiescing in the assessment made by paying the tax bill at the end of the year without objection or protest, and at the end of another year, when the second tax bill is due, offering for the first time to correct his previous year's list, would

amount to such negligence and laches as would preclude him from the assertion of such right. An examination of the authorities from the several states upon this subject seems to warrant the conclusion that a taxpayer who lists his property, and whose valuation is accepted as made, and who fails to pursue the remedies provided by statute for increasing or reducing valuation of assessment, but acquiesces therein by the payment of the tax bill, is without remedy. After the list has been made and the board of supervisors and board of equalization have had their sitting and adjourned, the matter is no longer an open question, but then becomes an adjudicated, determined or liquidated amount which is not subject to change at the suit of the taxpayer.

Appellant bank insists that the excess in the valuation was made by mistake and that the payment of the excess tax was a mutual mistake of the city and bank, and, therefore, it should have relief. In its answer it is alleged that it was a mistake on the part of the appellant, but not that it was a mutual mistake. Neither do we find any merit in the contention that the city admitted that appellant had listed property by mistake and had undertaken to recognize and acknowledge the same, because the indebtedness was fixed and certain at the time it so recognized and acknowledged the mistake, and therefore beyond the power of the council to correct or modify, and its order directing the collector to give the bank credit was *ultra vires* and void. Being void it was as if no order had been made and the credit had not been given. The payment by appellant bank of $3,412.92 to the city collector entitled it to a credit only upon its tax bill and not to a receipt in full. This payment left a balance of $992.89, due the city, which the council was wholly without authority to expunge.

For these reasons the answer, as amended, did not present a valid defense, and the trial court properly sustained the demurrer.

Judgment affirmed.