## Gray, Sheriff, Etc., et al. v. R. J. Reynolds Tobacco Company.

(Decided June 22, 1923.)

### Appeal from Jefferson Circuit Court (Chancery Branch, First Division).

1. Counties—Merely Stemming Tobacco Does Not Change its Character from Agricultural to "Manufactured Product"—"Unmanufactured Agricultural Product."—The mere stemming of tobacco and getting it into shape for manufacture does not change its character for the purpose of local taxation from that of an "unmanufactured agricultural product" into a "manufactured article."

2. Counties—Limitation of Local Taxation of Unmanufactured Agricultural Product Applies while it is in Hands of Manufacturer.—The provision of Acts 1920, c. 65, now Kentucky Statutes, section 4019a-16, limiting the local taxation on unmanufactured agricultural products to 15 cents on $100.00 worth, is not restricted to such products in the hands of the producer, or of a dealer, but applies where the products, in their unmanufactured state, are in the hands of a manufacturer.

3.  Courts—Opinion on Motion to Dissolve Temporary Injunction is Not Binding.—An opinion by a judge of the Court of Appeals, who had associated with him three other judges, on motion to dissolve a temporary injunction, is not necessarily a precedent, nor binding upon the Court of Appeals, though it may be considered for whatever persuasive effect it may have.

4.  Counties—Mistake in Listing Property for Taxation Need Not be Shown to be Mutual to Entitle Taxpayer to Relief.—It is not necessary for a taxpayer, in order to be entitled to relief against a mistake in listing property for taxation whereby he would be required to pay an excessive tax, to show that the mistake was mutual.

5.  Counties—Equity Can Relieve Against Illegal Tax.—Though the decisions of the board of equalization as to the valuation of property assessed for taxes are conclusive, equity can grant relief against the enforcement of an illegal tax, and therefore can enjoin the collection of a tax exceeding 15 cents on the $100.00 levied on any manufactured agricultural products contrary to Kentucky Statutes, section 4019a-16, which the owner mistakenly listed as raw material not in the hands of a manufacturer within section 4019a-10.

J. MAT CHILTON and W. F. CLARKE for appellants.

HUMPHREY, CRAWFORD & MIDDLETON for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

In making out its tax schedule of property due to be assessed in Jefferson county on July 1, 1921, the appellee and plaintiff below, R. J. Reynolds Tobacco Company, listed therein 7,148 hogsheads of tobacco as raw material on hand and not at its manufacturing plant.   Under the provisions of section 4019a-10 of the present statutes, which is a part of chapter 11, page 14, Acts of the special session held in 1917, certain enumerated classes of personal property are exempt from taxation for local purposes by county, city, school or other taxing districts, among which is "Machinery and products in course of manufacture of persons, firms or corporations actually engaged in manufacturing and their raw material actually on hand at their plants for the purpose of manufacture."   The listed tobacco not being "on hand" at plaintiff's manufacturing plant, but stored in other buildings in the city not connected with it, were not exempt from local taxes either by the county, city or other taxing district, and as listed would bear the same rate of taxation as other personal property within the taxing authority, which in case of the county of Jefferson was 45 cents on the one hundred dollars.

Just before the time for the penalty to go on for the collection of the taxes under the assessment, plaintiff brought this equity action in the Jefferson circuit court against the sheriff, the county attorney, and the tax commissioner for the county to enjoin them from collecting a greater rate on the value of the tobacco fixed in the schedule ($571,840.00) than 15 cents on the one hundred dollars' worth, which is the maximum rate provided for taxes on "unmanufactured agricultural products" by counties and cities for their local purposes under section 4019a-16, Acts of 1920, chapter 65, page 279, upon the ground that the tobacco was mistakenly classified in the schedule made out by plaintiff so as to bear a higher rate of taxation by the county than was permitted by the latter statute, and that the mistake was not discovered until immediately prior to the filing of the suit and that the collection of a higher rate by the county than 15 cents on the one hundred dollars' worth of property was wholly unauthorized by law and therefore invalid.

In the petition another correction was sought to be made which operated in favor of the county but which it is not necessary to here state, and the net result of which mistakes was to reduce the total amount of tax $1,634.50, which sum the petition prayed that defendants be enjoined from collecting, and that the assessment be corrected and the tax bill modified so as to conform to the true facts. The demurrer filed by defendants to the petition was overruled, and, they declining to answer, the court granted the permanent injunction against them as prayed for in the petition and they have appealed.

Three points are argued for a reversal of the judgment which are: (1), that a true construction of the statutes does not authorize the judgment of the court; (2), that there is no allegation that the mistake in classifying the property by plaintiff was mutual, and (3), that if mistaken in grounds (1) and (2), then the court has no jurisdiction to grant the relief sought, which grounds we will dispose of in the order named as briefly as possible.

1. The exemption under section 4019a-10 from local taxation of raw material actually on hand at a manufacturing plant applied to any kind of raw material, whether it was an agricultural product or not, and if any such material, including agricultural products, was not on hand at the manufacturing plant it would not be exempt from such taxation, and evidently under the classification

made in the schedule by plaintiff in its assessment of the tobacco it would not be entitled to relief under the 1917 act, now section 4019a-10 of the 1922 statutes, but the 1920 statute (now section 4019a-16 of the present statutes) exempted from local taxation, except at a rate not exceeding 15 cents on the one hundred dollars' worth of all unmanufactured agricultural products, and defendants' counsel concede that tobacco is an agricultural product. Under the decisions of this court in the cases of American Tobacco Co. v. City of Bowling Green, 181 Ky. 416 and P. Lorrilard Co. v. Ross, 183 Ky. 217, the mere stemming of tobacco and getting it into shape for the purposes of manufacture does not make of it a manufactured article, since in that condition it continued to remain only material out of which the manufactured product could eventually be made, and it was held in those cases that one engaged only in stemming and preparing it for eventual manufacture was not engaged in the manufacturing business so as to entitle him to any exemption from taxation. But counsel insists that the phrase "unmanufactured agricultural products," as employed and intended by the legislature in the enactment of the 1920 act, means such products in the hands of the producer, or in the hands of a *dealer,* and does not include such products in the hands of a manufacturer holding them with the intention and purpose of himself manufacturing them into a finished product, and that when they reach the hands of such a manufacturer they cease to be "unmanufactured agricultural products" and become *ipso facto* "raw material" and come within the provisions of section 4019a-10 instead of 4019-16. We, however, are furnished with no authority for such distinction; on the contrary, the question was before this court on a motion to dissolve a temporary injunction granted by the Jefferson circuit court in the case of P. Lorrilard Co. v. E. E. Bristow, City Assessor, etc., on February 19, 1921, and the writer of this opinion, who had associated with him Chief Justice Hurt and Judges Quin and Clay, overruled the motion therein and held that the 1920 act was constitutional, and that the owner of the tobacco, though he expected to convert it into a finished manufactured article, was entitled to the benefits of the act and that the city could exact of him no greater rate than 15 cents on the one hundred dollars' worth. That opinion, however, is not necessarily a precedent nor is it binding upon this

court, although it may be considered for whatever per-
suasive effect it may have.   Upon a reconsideration of
the question we see no reason to depart from it, since,
under the very terms of the 1920 act, all unmanufactured
agricultural products, other than such as may be "actu-
ally on hand at the plants of manufacturing concerns
for the purpose of manufacture," are subject to state
taxation, and that levied tax for state purposes is "in
lieu of all other *ad valorem* taxes by the state, or any
other county, city, town or other taxing district" except
a local taxation of 15 cents on one hundred dollars may
be imposed by cities and counties.   Under the statute
such manufactured articles as are on hand at the plants
are not even subject to state taxation, and its right under
the statute to levy a tax on unmanufactured agricultural
products exists only when they are not on hand at the
manufacturing plant, and it is only the agricultural pro-
duct *not on hand at the plants* that counties and cities
may tax at all and then not beyond a rate of 15 cents on
the one hundred dollars' worth.   In other words, the
statute by its very terms is broad enough to create the
limited exemption of agricultural products *owned by a
manufacturer* which are not on hand at its manufactur-
ing plant.   Necessarily, therefore, a local rate could not
be levied or collected by Jefferson county on the prop-
erty here involved exceeding 15 cents on the hundred
dollars' worth, and the attempt to collect one higher than
that is wholly invalid.

2.   The authorities cited in support of this ground
deal with contracts between individuals.   It is sought to
apply the doctrine in such cases to the assessment made
by plaintiff in this case, which is tantamount to saying
that when the schedule was delivered to the assessor it
became a contract between plaintiff and the taxing au-
thority which he represented and an agreement that the
property was assessable at the regular local rate for *ad
valorem* taxes, because of the error in classification.   We
are unable to discover any similarity between the facts
of this case and the doctrine of the cases relied on, and
must therefore disallow contention (2).

3.   In support of this contention the doctrine of a
number of cases from this court holding that the decis-
ions of the board of equalization, or other similar boards
provided for the assessment of property, are final and
conclusive between the taxing authority and the tax-

payer.   Some of those cases are: First National Bank of Hopkinsville v. City of Hopkinsville, 128 Ky. 383; Clarke County National Bank v. City of Winchester, 177 Ky. 532; Lowther v. Moore, 191 Ky. 284, and Sanford v. Roberts, 193 Ky. 377.  But an examination of them will demonstrate that the questions being dealt with related to an over valuation of the property of the taxpayer either by himself in making the assessment or by some reviewing or original assessing authority, such as the assessor or a board of equalization; and the cases involve the right of the taxpayer by a *suit in equity* to *correct* such *over valuation* and had nothing whatever to do with a wholly illegal assessment, whether made by the taxpayer or some assessing authority.   Indeed, the cases themselves expressly recognize the right of the taxpayer to invoke the aid of an equity tribunal in all cases where the tax sought to be collected is illegal, and such as the taxing authority has no power to collect.

In the summary opinion in the Bristow case referred to the tobacco had been wrongfully classified and assessed as "merchandise."  The taxpayer did not avail himself of any statutory provision by appearing before the board of equalization, and after the time to do that had expired brought its suit in equity to enjoin the collection of a portion of the amount of taxes on the ground that it was illegal and the illegality arose from a misclassification of the property.   In the Lowther case, relied on by defendants, it was expressly held that the chancellor would enjoin the collection of any tax which was illegal and void; and in the Sanford case it was said that: "It is well established that a court of equity will enjoin the collection of an illegal tax.   There is a full discussion of the subject in City of Lancaster v. Pope, 156 Ky. 1, where the authorities are collated, and it is clearly stated that equity will, at the instance of a single taxpayer, grant relief against an illegal tax. But throughout the discussion there is an unmistakable recognition of the limitation of power that prohibits a court of equity from interfering with excessive valuations or assessments."   In Negley v. Henderson Bridge Co., 107 Ky. 414, it was said: "But the right to have an injunction to restrain the collection of an illegal and void tax has long been recognized in this state, upon the ground of the inadequacy of the remedy at law."

The excess of the local assessment above 15 cents on the hundred dollars' worth upon the property involved in this case was and is clearly illegal because in direct conflict with the 1920 statute, as herein construed, and, since plaintiff could not recover the taxes from the county after collection by it, the remedy by equitable action was clearly open to it and objection (3) must likewise be denied.

Finding no meritorious objection to the judgment, it is accordingly affirmed.